# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00368-SCT

*QUANG THANH TRAN*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2004 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | DAVID BYRD CLARK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | JUDGMENT OF THE COURT OF APPEALS |
| | IS AFFIRMED  - 08/16/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### CONSOLIDATED WITH

## NO. 2004-CT-00369-SCT

*JOHNSON QUOC NGUYEN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/09/2004 |
| TRIAL JUDGE: | WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS E. ROYALS |
| | THOMAS R. MAYFIELD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL: |
| | BY:  W. DANIEL HINCHCLIFF |

DISTRICT ATTORNEY:                  DAVID BYRD CLARK
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                      THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED - 08/16/2007

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT**:

¶1.     Two men and a woman were indicted for money laundering after law enforcement officials searched their vehicle and discovered a false gas tank containing more than $170,000 in cash.  The driver and one of the passengers were convicted, and the other passenger was acquitted.  The issues presented are (1) whether the record contained evidence sufficiently linking the passenger to the money, and (2) whether the indictment's failure to specify the alleged illegal activity which produced the money requires reversal of the driver's conviction.  The Court of Appeals reversed the passenger's conviction, holding that the State did not meet its burden of connecting the passenger to the money.  The Court of Appeals affirmed the driver's conviction, holding that the indictment was not erroneous because it tracked the language of the statute.  Although we agree with the Court of Appeals' disposition of this case as to both defendants, we nevertheless granted certiorari to address the important question of whether indictments for money laundering are required to disclose the underlying illegal activity which the State alleges produced the money.

## BACKGROUND FACTS AND PROCEEDINGS

¶2. While parked in the median of Interstate 20 in Mississippi near the East Brandon exit, Rankin County Deputy Sheriff Shannon Penn observed a westbound 1996 Ford F-150 pickup cross the right-hand "fog line" directly in front of him. Upon pulling the vehicle over for the careless driving infraction, Deputy Penn conducted a "roadside interview" of the driver, Quang Thanh Tran, and the two passengers, Johnson Quoc Nguyen and Hanh Ti My Le. The occupants told him they borrowed the truck in Charlotte, North Carolina and were traveling I-20 to Houston, Texas. This aroused Deputy Penn's suspicion because, as he would later testify, "it was some things [sic] about their travel itinerary. They were going to a source city, coming from North Carolina, third party vehicle, borrowed type situation."

¶3. Deputy Penn requested and received permission from Tran to conduct a vehicle search, during which the deputy noticed dual gas tanks, one of which appeared to have been tampered with or removed. The fuel lines and wires running to the tank were cut and bent over, the spare tire had been repositioned, the nuts and bolts to the tank were shiny and not rusty, and the bands around the tank had been shifted.

¶4. Suspecting that the gas tank might contain contraband, Deputy Penn asked the occupants to follow him to the Rankin County Sheriff's Department where, after removing and examining the suspicious gas tank, he noticed a hinged access panel. He opened the access panel and discovered $170,040, vacuum-sealed in plastic and aluminum foil.

¶5. During questioning, all three suspects claimed the truck was purchased within the past week or two by Nguyen's girlfriend in North Carolina, and they were on their way to Houston to go shopping. All three denied any knowledge or ownership of the money.

3

¶6. After the interrogations, the Rankin County Sheriff's Department released all three occupants and initiated a civil forfeiture proceeding against the cash. After Rankin County received a default judgment against the money, Tran, Nguyen and Le filed a motion for relief from that default judgment. Attached thereto, in sworn affidavits, Nguyen and Le continued to deny any knowledge of the money, but Tran changed his story and claimed the money represented his and his family's life savings. The State then initiated criminal proceedings and obtained indictments against all three occupants for alleged money laundering.

¶7. The three defendants filed pre-trial motions to quash the indictments and suppress the evidence found as a result of Deputy Penn's searches. After a hearing, the trial court denied the motions, and the matter proceeded to trial.

¶8. At trial, the State tendered Larry Davidson, an Agent with the Federal Drug Enforcement Administration, as an expert in "drug trafficking and the proceeds of drug trafficking." Counsel for the defense was allowed to voir dire Agent Davidson regarding his qualifications, following which the defense accepted him, without objection, as an expert witness. Agent Davidson testified that, after examining the modified gas tank, reading the transcripts of the three defendants' statements, analyzing photographs of the money seized by Deputy Penn, and examining the offense report, he concluded that the money was derived from narcotics trafficking. The only evidence of any link between the defendants and the money was Tran's assertion that the money belonged to him and his family.

¶9. The defendants moved for directed verdicts, which were denied. The jury found Tran and Nguyen guilty, and found Le not guilty. The trial court sentenced both Tran and Nguyen

4

to twenty (20) years in the custody of the Mississippi Department of Corrections. Tran and Nguyen both filed appeals which were assigned to and consolidated by the Court of Appeals.

¶10. The Court of Appeals reversed Nguyen's conviction, finding the evidence insufficient. But with three judges dissenting, it affirmed Tran's conviction, holding the indictment was not defective. *Tran v. State*, 2006 Miss. App. LEXIS 394 (Miss. Ct. App. May 16, 2006). Both Tran (as to the affirmance of his conviction) and the State (as to the reversal of Nguyen's conviction) filed Petitions for Writ of Certiorari, which we granted[1]

**ANALYSIS**

¶11. The Court of Appeals fully addressed each of the defendants' numerous assignments of error and, except for its analysis of the sufficiency of the indictment, we adopt herein the Court of Appeals' analysis. *See Tran*, 2006 Miss. App. LEXIS 394.[2]

**I.**

¶12. Tran asserts that the indictment against him, which alleged he was transporting money derived from "some unlawful activity," failed to disclose to him the nature of the alleged unlawful activity. Thus, Tran argues, the indictment was legally insufficient, and his conviction must be reversed. Our review of the legal sufficiency of an indictment is an issue of law, and therefore is reviewed de novo. *Peterson v. State*, 671 So. 2d 647, 652 (Miss. 1996).

---

[1]*Tran v. State*, 2007 Miss. LEXIS 160 (Miss. Mar. 1, 2007); 2007 Miss. LEXIS 161 (Miss. Mar. 1, 2007); *Nguyen v. State*, 2007 Miss. LEXIS 162 (Miss. Mar. 1, 2007); 2007 Miss. LEXIS 163 (Miss. Mar. 1, 2007).

[2]Although we granted the State's petition for certiorari in order to review the record, we hereby find that the Court of Appeal's disposition of Defendant Nguyen's case was correct.

¶13. Tran was indicted and convicted under Mississippi's money laundering statute, which states in pertinent part:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state; (ii) knowing that the monetary instrument or funds involved in the transportation represent the proceeds of **some form of unlawful activity** and knowing that such transportation is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of **specified unlawful activity** . . . shall be [subject to] imprisonment for not more than twenty (20) years.

Miss. Code Ann. § 97-23-101(1)(b)(ii)(1) (emphases added). Tran's indictment, closely tracking the language of the statute, charged him with

> willfully, unlawfully and feloniously transport[ing] or attempt[ing] to transport a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state knowing that the monetary instrument or funds involved in the transportation represent proceeds of **some unlawful activity** and knowing that such transportation was designed to conceal or disguise the nature, location, the source, the ownership or the control of the proceeds, in violation of Mississippi Code Annotated Section 97-23-101 (1972), as amended, and against the peace and dignity of the State of Mississippi.

(Emphasis added).

¶14. Prior to trial, Tran moved to quash the indictment, claiming it failed to specify the alleged "unlawful activity" which produced the funds found in the gas tank. Tran's counsel argued to the trial court that the term "some unlawful activity" was unclear and could encompass gun running, gambling, or any other crime, and that "[the indictment] just says 'specified unlawful activity.' And I just don't know how to defend an ambiguous statement like that."

6

¶15. The trial court disagreed, holding that since the language in the indictment tracked the language in the statute, the defendants were adequately informed of the charges against them. It is the question of whether the indictment was required to disclose the "unlawful activity" which we now address.

¶16. The government may not prosecute a criminal defendant "for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ." U.S. Const. amend. V. The purpose of an indictment is to satisfy the constitutional requirement that a "defendant be informed of the nature and cause of the accusation . . ." U.S. Const. amend. VI; Miss. Const. art. 3, § 26. *See also* U.R.C.C.C. 7.06 (indictment must include a "plain, concise and definite written statement of the essential facts constituting the offense charged and *shall fully notify the defendant of the nature and cause of the accusation.*") (emphasis added). The purpose of these requirements is to ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government. Therefore, in order for an indictment to be sufficient, "it must contain the essential elements of the crime charged." *Peterson*, 671 So. 2d at 652-53 (citing *May v. State*, 209 Miss. 579, 47 So. 2d 887 (1950)).

¶17. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll,* 105 U.S. 611, 612, 26 L. Ed. 1135 (1882); *Ward v. State,* 479 So. 2d 713, 715 (Miss. 1985); *Hickombottom v. State,* 409 So. 2d 1337 (Miss. 1982); *Anthony v. State,* 349 So. 2d 1066 (Miss. 1977); *State v. Labella,* 232 So. 2d

7

354 (Miss. 1970). Moreover, "the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487, 8 S. Ct. 571, 31 L. Ed. 516 (1888).

¶18.  However, simply tracking the language of a statute will not always be sufficient.  As this Court pointed out in *Jones v. State*, "whether an indictment in the language of the statute is sufficient, or whether other words or acts are necessary to properly charge the commission of a crime is dependent upon the nature of the offense and the terms in which it is described by the statute."  856 So. 2d 285, 289 (Miss. 2003).

**II.**

¶19.  By way of analogy, this Court has clearly and consistently held that an indictment which simply follows the language of Mississippi's burglary statute is insufficient. The crime of burglary of a dwelling has two elements: (1) the burglarious breaking and entering a dwelling, and (2) the felonious intent to commit *some crime* therein. Miss. Code Ann. § 97-17-23(Rev. 2006); *Thames v. State*, 221 Miss. 573, 73 So. 2d 134 (1954).  Because the offense of burglary requires the State to prove the defendant broke into a dwelling with the intent to commit "some crime therein," the indictment must specify the crime the accused intended to commit.  *Hodges v. State*, 912 So. 2d 730, 774 (Miss. 2005) (citing *Lambert v. State*, 462 So. 2d 308, 311 (Miss. 1984)).  This proposition has a long history in Mississippi.

¶20.  In 1897, this Court recognized that an indictment which fails to allege the particulars of the underlying crime should be quashed.  *State v. Buchanan*, 75 Miss. 349, 22 So. 875

8

(1897). In *Buchanan*, the indictment charged the defendant with the "willful, felonious and burglarious intent then and there to commit some crime to the jurors aforesaid unknown." *Id.* at 350. After the trial court sustained the defendant's demurrer for insufficient indictment, the Attorney General contended on appeal that an intent to commit a named particular felony is unnecessary and contrary to state policy. However, this Court characterized the Attorney General's reasoning as "unsound, because this general and indefinite averment of an intent to commit some crime, does not advise the accused of the nature and character of the crime, preferred against him." *Id.* The defendant, they continued, "is left to grope in the dark as to what crime the state may offer evidence to show he intended to commit." *Id.* at 351.

¶21. This issue was revisited in *Brumfield v. State* where, upon laying out the elements necessary for a sufficient burglary indictment, the Court noted that "[b]oth elements must be laid out in the indictment and both must be proven as laid." *Brumfield*, 206 Miss. 506, 507, 40 So. 2d 268 (1949); *see also Newburn v. State,* 205 So. 2d 260 (Miss. 1967) (the crime that an alleged burglar intended to commit "must be named in the indictment"). The Court's main concern in *Brumfield* was notice to the accused of the nature and character of the crime for which he was indicted. The Court concluded that "[i]n common fairness, every defendant charged with a high crime is entitled to know specifically and particularly what felony is laid to his charge." *Id.*

¶22. In *State v. Berryhill*, this Court noted that an indictment which does not specify the underlying crime to the charge of burglary does not adequately inform the defendant of the nature of that particular charge because the underlying crime could be "probably one hundred

9

different crimes and/or misdemeanors and still constitute the charge" and may be subject to "evolving prosecutorial theories." ***Berryhill***, 703 So. 2d 250, 256 (Miss. 1997). Such tactics are "at odds with this Court's jurisprudence on the need for an indictment to give enough notice for a defendant to prepare a defense." ***Id.***; *see also* ***Lambert***, 462 So. 2d at 319 (stating that because the indictment provides the basis of notice to the defendant of the crime for which he is to be tried, the failure to inform of the crime underlying the burglary was tantamount to failing to allow a defendant to prepare a defense).

**III.**

¶23. Tran argues that his indictment employing the term "unlawful activity" is unconstitutionally vague, and that he is entitled to be informed of the "unlawful activity" which allegedly produced the funds he is accused of laundering. We agree. We find Tran's indictment to be no more informative than a hypothetical indictment which charges a defendant with entering a conspiracy to commit "some unlawful activity." In the Code, the Legislature defined the term "unlawful activity" as any activity that constitutes a felony under federal or state law. Miss. Code Ann. § 97-23-101(3)(a)(Rev. 2006).[3] Thus, using the definition in that statute, Tran's indictment avers that he knew the money he was transporting represented the proceeds of some felony under federal or state law. Forcing defendants

---

[3]Specifically, Subsection (3)(a) states:

The term "knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of *activity that constitutes a felony under state or federal law*.

Miss. Code Ann. § 97-23-101(3)(a)(Rev. 2006)(emphasis added).

10

indicted for money laundering to trial without first fairly informing them of the specific "unlawful activity" alleged, constitutes a clear deprivation of the rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution; Article 3, Section 26 of the Mississippi Constitution; and Rule 7.06 of the Uniform Rules of Circuit and County Court Practice.

¶24. Moreover, only a grand jury can specify the crime a defendant is charged with committing. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). The indictment's purpose is to notify the defendant of the charges he must meet and provide enough detail so that the defendant may plead double jeopardy in a future prosecution based on the same set of events. *United States v. Green*, 964 F.2d 365, 372 (5th Cir. 1992). This Court has held, "If the grand jury did not know what crime they were charging against the defendant, how could the defendant know the nature of the crime with which he is charged?" *Brumfield*, 206 Miss. at 507. The United States Supreme Court noted:

> A cryptic form of indictment in cases [where guilt depends upon a specific identification of fact] requires the defendant to go to trial with the chief issue undefined . . . . To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of fact not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell v. United States*, 369 U.S. 749, 766, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962).

¶25.   The arguments for requiring a specific allegation of the underlying crime in an indictment for money laundering are the same as for burglary: to provide sufficient notice to defendants of the charges brought against them, and to ensure clarity and a lack of abuse by prosecutors in grand jury proceedings.  Absent a requirement that prosecutors *specify* the underlying offense, defendants are not afforded the procedural right of indictment by grand jury because there is no crime of money laundering without the "specified unlawful activity" from which the proceeds stem.  Indeed, the statute mandates that the "unlawful activity" be "specified." To specify is defined as, "to mention or name in a specific or explicit manner: tell or state precisely or in detail."  Webster's Third New Int'l Dictionary 2187 (3d ed. 1986).  Clearly, the language of the statute requires that an underlying crime be named in the indictment of a state money laundering charge.

IV.

¶26.   Moreover, we also find the federal money laundering statute, and its interpretation by the federal courts, to be helpful.  The language of the federal money laundering statute is substantially identical to the provisions in question here.[4]  Unlike our statute, the federal

_____

[4]The pertinent language of the federal statute is as follows:

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

12

statute, in another subsection, provides a list of numerous crimes which would qualify as "specified unlawful activity" underlying a money laundering charge. Indictments charging persons under 18 U.S.C. § 1956 must allege the specific predicate crime found under § 1956(c)(7) in order to be upheld.[5] "The language of the statute, in conjunction with the definitions provided in 18 U.S.C. § 1956(c) indicates that Congress intended to criminalize a broad array of transactions designed to facilitate numerous federal crimes . . ." *United States v. LeBlanc*, 24 F.3d 340, 346 (1st Cir. 1994).

¶27. Constitutionally speaking, the purpose of identifying the predicate crime in the federal money laundering indictment is to sufficiently put the defendant on notice to prepare a defense, and for double jeopardy purposes. *United States v. Lineberry*, 185 Fed. App'x. 366, 370 (5th Cir. 2006). "To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984), *cert. denied*, 469 U.S. 1226, 105 S. Ct. 1222, 84 L. Ed. 2d 362 (1985). In *Lineberry*, the defendant argued that the following indictment under 18 U.S.C. § 1956 was inadequate notice of the underlying charge:

---

18 U.S.C. § 1956(a)(2)(B)(I).

[5] Some examples of such specific crimes are, *inter alia*, any Racketeering Influenced and Corrupt Organizations ("RICO") violation; the manufacture, importation, sale or distribution of a controlled substance; murder, kidnaping, robbery, extortion, destruction of property by means of explosion or fire, or a crime of violence; fraud by or against a foreign bank; bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official.

[Lineberry] knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity, namely, prostitution in violation of the laws of the State of Texas.

*Id.* at 369. The court held that the indictment gave Lineberry sufficient notice due to the reference to the Texas state prostitution charges which allowed him to prepare an ample defense on that basis. *Lineberry*, 185 Fed. App'x. at 371.

¶28. In *United States v. Knowles*, a district court quashed the indictment based on 18 U.S.C. § 1956 because the underlying crime, "drug trafficking," did not unambiguously set out the elements of the offense or allege upon which § 1956(c)(7) crime the money laundering charge was premised. *Knowles*, 2 F. Supp. 2d 1135, 1140 (E.D. Wis. 1998). In dismissing the indictment, the court noted that "[b]ecause the current indictment is ambiguous, Knowles could not rely on the indictment to protect his double jeopardy rights." *Id.* at 1141. Furthermore, "neither the court nor the defendant should be required to guess concerning the alleged underlying offense that constitutes the 'specified unlawful activity.'" *Id.*

¶29. The Court of Appeals relied on the Fifth Circuit case of *United States v. Loe* to rule that Tran's indictment was sufficient. *Loe*, 248 F.3d 449 (5th Cir. 2001). In *Loe*, the defendants were indicted for conspiracy, money laundering, and wire, mail and tax fraud in connection with fraudulent reports made to their insurance carrier as well as to the Internal Revenue Service. Pertinent here, Loe argued that the money laundering indictment, which alleges as the underlying crime conspiracy to commit mail and wire fraud, was insufficient because it did not allege from which specific act of mail or wire fraud the funds were

14

derived.  The Fifth Circuit dismissed their arguments, holding that the underlying acts were clearly identified to the jury.  *Id.* at 468.

¶30.    However, the Court of Appeals' majority misinterpreted the facts and quoted the following language from *Loe* to support its approval of Tran's indictment:

> This argument misinterprets the term, "specific unlawful activity."  This term does not imply that the indictment must list a specific unlawful act that is the source of the money.   Instead, the statute proposes "specified unlawful activity" as a term of art.  A specified unlawful activity is one of a set of federal crimes listed in 18 U.S.C.A. § 1956(c)(7).  Section 1957 merely requires money to be derived from a particular set of federal crimes.  It does not require the indictment to specify which unlawful activity generated the funds in question.  In any case, we note that the money laundering counts of the indictment included allegations sufficient to (1) enumerate each element of the offense; (2) provide Appellants with notice of the precise transactions for which they were being prosecuted; and (3) prevent future prosecutions for the same offense.  Thus, the indictment was sufficient.

*Tran*, 2006 Miss. App. LEXIS at *29 (citing *Loe,* 248 F. 3d at 468).

¶31.    In its reliance on *Loe*, the Court of Appeals focused on the language,  "[Section 1957] does not require the indictment to specify which unlawful activity . . . ,"to conclude that, for prosecutions under the federal money laundering statute, the Fifth Circuit requires an indictment to allege no more than "specified unlawful activity."  We find the Court of Appeals' interpretation of *Loe* is flawed for two reasons, both of which are revealed in the paragraph from *Loe* which immediately precedes the language quoted by the Court of Appeals:

> Each of the money laundering counts referred to one of the counts alleging conspiracy to commit mail and wire fraud.  The conspiracy counts listed several alleged acts of mail and wire fraud. [The defendant] notes that the money laundering counts of the indictment did not specify which acts of mail or wire fraud was the source of the funds.  Consequently, [the defendant]

15

argues that the indictment allowed for a non-unanimous jury verdict regarding which act of fraud was the source of the money.

*Loe*, 248 F. 3d at 468.

¶32.   First, unlike the case before us today, the indictment in *Loe* fully informed the defendant of the particular crime the prosecution alleged produced the money.   The defendant in *Loe* did not even argue that the indictment failed to disclose the underlying crime.  As stated in *Loe*, "Each of the money laundering counts referred to one of the counts alleging *conspiracy to commit mail and wire fraud*." ***Id.*** (emphasis added).   In fact, the indictment in *Loe* not only specified the underlying crime, but it further specified various alleged acts which constituted mail and wire fraud.   The Fifth Circuit held only that the specific acts which constituted the mail and wire fraud need not be disclosed in the indictment.

¶33.   Second, the issue raised by the defendant in *Loe* was very different from the issue before this Court.   In *Loe*, the defendant argued that, because there were several specific acts of wire and mail fraud alleged, "the indictment allowed for a non-unanimous jury verdict regarding which act of fraud was the source of the money." ***Id.***

¶34.   By contrast, Tran's indictment informs him of neither the specific acts which make up the crime, nor the nature of the crime itself.   Thus, we find *Loe* inapposite to the case before us today.

¶35.   Although Mississippi has not codified which specific crimes qualify as "unlawful activity" under the money laundering statute, the same concerns regarding notice and double jeopardy apply. Defendants charged with violation of Mississippi's money laundering statute

16

are entitled to notice of the specific illegal activity alleged by the State, the same as those indicted under the federal statute. Placing a reasonable construction on the phrase, "specified unlawful activity," this Court concludes that an indictment for money laundering under the Mississippi statute requires an affirmative disclosure of the underlying offense. Indeed, the State recognized that, to convict Tran and Nguyen of money laundering, it had the burden to prove that a predicate crime – here, drug trafficking – was committed.

## IV.

¶36. We find that Tran's indictment was defective. However, our inquiry does not end here. Few, if any, prosecutions have been perfect, and there can be errors – even errors of constitutional proportions – which do not require reversal of a conviction. The United States Supreme Court has recognized that "most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Trial and appellate courts have the duty to be fair, not only to the defendant, but to the State as well. Harmless-error analysis is often necessary to prevent unfair prejudice to the State, and the State is certainly prejudiced where convictions are reversed based on errors which do not affect the substantial rights of the parties. *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Bynum v. State*, 929 So. 2d 312 (Miss. 2006); *Jasper v. State*, 871 So. 2d 729, 731-32 (Miss. 2004); *Butler v. State*, 217 So. 2d 3, 6 (Miss. 1968).

¶37. Harmless-errors are only those "which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. *Chapman*, 386 U.S. at 22. In conducting harmless error analysis, this Court has the power and duty to

17

review the record de novo in order to determine the error's effect. *Fulminante*, 499 U.S. at 295. Harmless error may apply to cases where an accused's constitutional rights were violated. *Chapman*, 386 U.S. at 22.

¶38. There was a time in our history when the State provided criminal defendants with virtually no discovery. Defendants often proceeded to trial with little more information than that contained in the indictment. Under such circumstances, the failure of an indictment to disclose the "illegal activity" would almost certainly be fatal to the State's prosecution. However, our criminal justice system has evolved to the point that today's defendants are provided early in the prosecution with a great deal of information. The Uniform Rules of Circuit and County Court Practice require the prosecution to provide to the defendant numerous categories of documents and information. U.R.C.C.C. 9.04. Bearing this in mind, we must carefully examine the record to determine whether there was a violation of Tran's constitutional guarantee of fair notice and opportunity to prepare a defense.

**IV.**

¶39. In the initial pleadings filed in the civil forfeiture action, the Rankin County Sheriff's Department made its claim pursuant to Mississippi Code Annotated Section 41-29-153(Rev. 2005), more commonly known as the Mississippi Controlled Substances Act. After the court entered a default judgment on January 28, 2003, Tran filed a motion for relief from the default, claiming the money found in the false gas tank was not the proceeds of drug trafficking as alleged by the Sheriff, but rather, was money which belonged to him and his family. The Sheriff's response to Tran's motion (which was provided to Tran) again averred that the money was subject to seizure and forfeiture based on Mississippi Code Annotated

18

Section 41-29-153, which holds that all property resulting from the sale of controlled substances is subject to forfeiture. Thus, based on the civil forfeiture action which was filed prior to Tran's indictment, he was clearly informed that the Sheriff's Department deemed this money the proceeds of drug trafficking activities.

¶40. Additionally, Tran admitted in an affidavit on July 17, 2003, that "[t]he officers attempted during [the interrogation] to get me to say the money was used for drug purposes." And then, on November 19, 2003, Tran filed a Motion to Suppress and Dismiss, in which he asserted that the cash was seized under the provisions of Mississippi Code Annotated Section 49-21-101, *et seq.*, "even though there were no drugs located and no individuals in the vehicle were charged for any illegal action including a traffic ticket." (Emphasis original). Also, in his Motion to Dismiss for Lack of a Constitutional Speedy Trial filed on November 19, 2003, Tran acknowledged that the cash was seized under the Mississippi Controlled Substances Act.

¶41. During a suppression hearing on January 26, 2004, the State indicated that Larry Davidson would be called as an expert in narcotics and the proceeds of drug trafficking. When asked if the State had provided all information to the defense, the district attorney answered, "Yes sir, I have. I have divulged it to him and sent the [curriculum vitae] to him, and I provided everything we have that was requested." Although the record is unclear as to when the defense was provided with the information regarding the State's expert witness, Tran made no objection that he had not received fair notice, nor did he complain that he had not been provided adequate time to prepare a defense.

¶42. Based on the record before us, we find the omission of the "specified unlawful activity" in the indictment to be harmless error which did not render the trial fundamentally unfair. The defense had ample notice that the charge of money laundering was based on the State's claim that the money was the product of drug trafficking.

¶43. By today's decision, we do not wish to diminish the importance of the information required to be included in an indictment. Indeed, were it not for the abundance of evidence in the record that Tran had fair notice and an opportunity to prepare a defense, his constitutionally-infirm indictment would require that we reverse his conviction. However, for the reasons stated, we find this assignment of error to be without merit.

## CONCLUSION

¶44. We find that the Court of Appeals correctly reversed and rendered Nguyen's conviction. We find Tran's indictment was defective for failure to specify the unlawful activity, but we further find the indictment's defect was harmless error.

¶45. We emphasize that an indictment charging a person with money laundering under Mississippi Code Annotated Section 97-23-101(1)(b)(ii)(1)(Rev. 2006), is required to specify the "unlawful activity" from which the illegal proceeds are alleged to have derived. We further hold that violation of this requirement may be cured only where, as here, the prosecution demonstrates that it otherwise provided timely notice to the defendant of the alleged illegal activity, and that the notice clearly and sufficiently provided the defendant a fair opportunity to prepare a defense to the charges. Prosecutors wishing to avoid the burden of showing notice apart from the indictment, and the risk that such notice will be found inadequate, should carefully specify the unlawful activity in the indictment.

20

¶46.  We find all other assignments of error to be meritless, and we affirm the jury's disposition of Tran's case.

¶47.  **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  AS TO CASE # 2004-CT-00368-SCT:  CONVICTION OF MONEY LAUNDERING AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  AS TO CASE # 2004-CT-00369-SCT:  THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES AND LAMAR, JJ., CONCUR.  RANDOLPH, J., CONCURS IN PART.  DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.  EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, J.;  SMITH, C.J., JOINS IN PART.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶48.  Our state and federal constitutions guarantee criminal defendants the specific right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; Miss. Const. art. 3, § 26.  By looking beyond the face of the indictment, the majority creates a "good enough" standard where mere constructive knowledge suffices.  This interpretation betrays the letter and spirit of the law.  Because this judicial construction strips our citizens of a fundamental constitutional guarantee, I must dissent.

¶49.  I completely agree that the indictment was defective because it omitted an essential element of the crime.  However, contrary to the majority's holding, "[a] defendant's notice of an element not alleged in an indictment *does not cure* an insufficient indictment." ***United States v. Henry***, 288 F.3d 657, 661 (5th Cir. 2002) (citing ***United States v. Cabrera-Teran***, 168 F.3d 141, 143 (5th Cir. 1999)) (emphasis supplied).  Courts do not look beyond the face of the indictment to infer constructive knowledge, because  "[t]he sufficiency of a criminal

indictment is determined *from its face*." **United States v. Critzer**, 951 F.2d 306, 307 (11th Cir. 1992) (emphasis supplied). Therefore, by looking to extrinsic evidence of Tran's knowledge of the crime charged, the majority is subverting the Sixth Amendment of the United States Constitution and Section 26 of our state's bill of rights. U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

¶50. Under the majority's new standard, any defect in the indictment can be cured by showing that the defendant *should have known* of the charges against him. It is difficult to imagine a situation where the state will not be able to show that the defendant had constructive knowledge of the charges against him.

¶51. Furthermore, even if the deficiency does not demand automatic reversal, the state never had to prove the missing essential element of the crime because the jury instructions contained the same fatal defect as the indictment. The jury was instructed that it could find Tran guilty of money laundering if the proceeds were from "some form of unlawful activity." Therefore, it does not matter that Tran had a fair opportunity to prepare a defense. No defense would have helped Tran if the state was never required to prove the proceeds were from drug trafficking.[6]

¶52. Finally, even if the jury was properly instructed, the record contains no evidence that Tran knew of any underlying crime. The evidence offered by the state consisted of the testimony of two witnesses offering mere guesses as to the origin of the money. Additionally, no connection was ever established between Tran and known drug traffickers.

---

[6]Unfortunately, the defense failed to raise this issue in the appeal.

22

Accordingly, the defective indictment in this case was never cured, and cannot by any stretch of the imagination be considered harmless error.

¶53.  Today's opinion threatens to turn our courts into modern-day Star Chambers, cracking the very foundation of the American criminal justice system.  Because we are prohibited from considering extrinsic evidence of notice, the indictment is not harmless error, and I would reverse.

**EASLEY, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶54.  I fully concur with the majority's holding in this case as to the affirmance of Quang Thanh Tran's (Tran's) conviction of money laundering and sentence to serve twenty years in the custody of the Mississippi Department of Correction.  As to Tran, the Court of Appeals determined that the evidence was sufficient to demonstrate that the money found hidden in the gas tank was the proceeds of unlawful activity.  The Court of Appeals found as follows:

> In ***U.S. v. Carr***, 25 F.3d 1194 (3d Cir. 1994), the Third Circuit Court of Appeals considered whether the federal government presented sufficient evidence to sustain a conviction for attempted money laundering under 18 U.S.C. § 1956(a)(2)(B)(i) - the federal counterpart to 97-23-101(1)(b)(ii)(1). In considering whether the government presented sufficient evidence to sustain its burden of proof under the first scienter element, Carr found sufficient evidence where: (a) the jury heard testimony that the defendant took numerous trips to the Cayman Islands and Colombia just after cash exchanges between a co-conspirator and a cooperative government witness; (b) the defendant admitted to knowing and frequently traveling with the ringleader of the money laundering conspiracy; (c) the jury heard testimony about an occasion when the defendant lied to passport officials in order to obtain a new passport which would not contain numerous stamps showing visits of short duration to Colombia; (d) evidence showed that the defendant lied to Customs officials about how he obtained a blue bag that contained $180,000 in $100 bills; (e) taped phone conversations both before and after the defendant was caught with the money indicated that the defendant knew the money he was carrying had

23

been derived from illegal transactions; and (f) positive alerts by drug sniffing dogs indicated that much of the money was likely used in drug transactions. *Id*. at 1206-07.

Here, there is much less evidence than in *Carr*. Still, the jury could reasonably conclude that Tran initially denied ownership of the money because he knew it represented the proceeds of narcotics trafficking. Agent Davidson testified regarding common methods of wrapping money exchanged in narcotics transactions and the purpose of wrapping it as such – to minimize the scent of the money and increase the likelihood of evading capture.

The defendant in *United States v. Gallo*, 927 F.2d 815 (5th Cir. 1991) was arrested while transporting $299,985 in his car. To prove that the defendant in *Gallo* knew the money represented proceeds of narcotics trafficking, the Government introduced the following evidence: (a) the defendant received a box of money from a suspected narcotics trafficker who had been under DEA surveillance for several months; (b) the suspected narcotics trafficker transferred the box of money shortly after he made a call from a public phone, a common method drug dealers use to set up meetings; (c) the box in the defendant's car contained money wrapped in foil; (d) on the foil packets, the DEA found fingerprints of another known drug dealer under DEA surveillance; (e) after the defendant was arrested, he made two false exculpatory statements about the car and the box of money; (f) on the same day that the suspected narcotics trafficker gave the defendant the box of money, the suspected narcotics trafficker gave $ 300,000 that was wrapped in foil and placed in a cardboard box to the known drug dealer – in exchange for 25 kilograms of cocaine; (g) the transfer between the suspected narcotics trafficker and the known drug dealer was very similar to the transfer between the suspected narcotics trafficker and the defendant; (h) the DEA searched the known drug dealer's house and found $ 1.2 million and a money counting machine; and (i) the DEA searched the suspected narcotics trafficker's house and found fifty kilograms of cocaine. *Id*. at 822. The *Gallo* court held that, based on the concerted action among the defendants, the suspected narcotics trafficker, and the known drug dealer, combined with the defendant's false exculpatory statements, the jury could reasonably infer that the defendant knew he was transporting proceeds of unlawful activity. *Id*.

*Like Nguyen, Tran denied knowledge of the triple-wrapped money hidden in the false gas tank. However, Tran recanted his initial denial and later filed a sworn affidavit incident to the forfeiture proceeding. In his sworn affidavit, Tran claimed the money represented his life savings. Tran lied at least once. Either he lied when he said the money did not belong to him, or he lied when he said it did.* The jury could have found that Tran told

Deputy Penn that the money did not belong to him because he did not want to be connected to it. That is, Tran's initial denial could have been for exculpatory reasons. The State presented evidence that the money Tran claimed represented his life savings was wrapped in a manner common to methods used in narcotics trafficking. True enough, Tran did not confess by testifying that the triple-wrapped and concealed money was, in fact, the fruits of some unlawful activity. However, we are not called upon to weigh the evidence in this case. Rather, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bush*, 895 So. 2d at [843]. Viewing the evidence in the light most favorable to the prosecution, the jury heard evidence that ***(a) Tran drove a truck from North Carolina to Houston, Texas for the purpose of a shopping trip, (b) the truck was not owned by any of its occupants, (c) the truck had an auxiliary gas tank, (d) the auxiliary gas tank had been electronically and physically disconnected and altered into a secret storage compartment, (e) Tran admitted in his affidavit that he stored over $170,000 in a false gas tank, (f) Tran admitted that the money was his, (g) the money was wrapped up and [sic] plastic and sealed, (h) Deputy Penn testified that Tran initially denied ownership of the money, and (i) Agent Davidson testified that, in his expert opinion, the money was wrapped in a manner intended to disguise the scent of the money from drug dogs.*** The jury was called upon to review the conflicting testimony. They were instructed by the circuit court to use their good common sense and sound honest judgment in evaluating the evidence. The jury heard evidence that could lead a rational trier of fact to find sufficient proof of the essential elements of the crime beyond a reasonable doubt. The combination of Tran's inconsistent sworn statements, the manner in which the money was wrapped, and the fact that Tran stored what he claimed was his life savings in the gas tank of a pickup amount to sufficient evidence to sustain Tran's conviction for money laundering.

*Tran v. State*, 2006 Miss. App. LEXIS 394, 18-24 (Miss. Ct. App. 2006) (emphasis added).

¶55. As the majority does not disturb the Court of Appeals' judgment to reverse and render Johnson Quoc Nguyen's (Nguyen) conviction and sentence imposed by the Circuit Court of Rankin County, it affirms the Court of Appeals' judgment without any discussion. I dissent as to the majority's judgment to affirm the Court of Appeals' judgment to reverse and render as to the jury's conviction of Nguyen for money laundering and sentence to serve twenty

25

years in the custody of the Mississippi Department of Correction. While I reach a different result as to Nguyen than the majority and the Court of Appeals, my dissension is based solely on the evidence presented in support of the statutory elements required under Mississippi Code Annotated Section 97-23-101 (Rev. 2006) as discussed in the Court of Appeals' opinion. *Tran v. State*, 2006 Miss. App. LEXIS 394, *15-17. The Court of Appeals held:

> Section 97-23-101(1)(b)(ii)(1) contains two scienter elements. The first scienter element requires that a defendant "[knew] that the monetary instrument or funds involved in the transportation represent[ed] the proceeds of some form of unlawful activity. . . ." ***Here, we are of the opinion that the record reveals no evidence that Nguyen knew the money was hidden in the gas tank or that he knew it represented proceeds of specified unlawful activity.***
>
> Since Nguyen denied having any knowledge that the money was secreted in the gas tank and was not caught in actual possession of the money or the truck in which it was discovered, the State was required to prove that Nguyen had constructive possession of the money. The Mississippi supreme court explained the theory of constructive possession in *Curry v. State*, 249 So. 2d 414 (Miss. 1971). In *Curry*, the Supreme Court stated:
>
>> [T]here must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the [contraband] involved was subject due to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. *Id*. at 416 (emphasis added).
>
> In the present case, the evidence indicated that ***Nguyen's girlfriend purchased the truck*** two weeks before Nguyen, Tran, and Le left on their trip to Texas. Deputy Penn found the money hidden in a modified gas tank in that truck. While there is evidence that connects Nguyen to the truck, there is no evidence that Nguyen owned the truck. Moreover, there is no evidence that Nguyen knew that $170,000 was secreted in the false gas tank. By his affidavit, Nguyen stated that he was not aware of the money, had never seen it before, and did not know to whom it belonged. According to Tran's

26

affidavit, Tran owned the money and he "did not tell the others of the money in [his] truck." *While it may seem suspicious that Tran was able to somehow borrow Nguyen's girlfriend's truck and hide $170,000 in it, all without Nguyen's knowledge, that suspicion does not rise to the level of proof beyond a reasonable doubt that Nguyen knew the money in the gas tank represented proceeds from narcotics trafficking. It is possible that Nguyen lied when he said he did not know about the money. It is also possible that Tran lied when he said Nguyen did not know about the money. Still, those possibilities, alone, are insufficient proof that Nguyen knew that the money represented proceeds of some form of unlawful activity.* Accordingly, we reverse Nguyen's conviction and render a judgment of acquittal. We consider the remaining issues as they apply to Tran.

*Tran*, 2006 Miss. App. LEXIS 394, * 15-17 (emphasis added).

¶56.    Mississippi Code Annotated Section 97-23-101 requires that a defendant know that the monetary instrument or funds involved in the transportation represented the proceeds from some form of unlawful activity.[7] The Court of Appeals found that no evidence supported that Nguyen knew that the money was hidden in the false gas tank or that it represented the proceeds of specified unlawful activity. However, the majority found that the evidence was sufficient to support that Tran knew that the money was hidden and that it

---

[7] Miss. Code Ann. § 97-23-101 (1)(b) (Rev. 2006) provides:

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the state to or through a place outside the state or to a place in the state from or through a place outside the state;

 (I) With the intent to promote the carrying on of specified unlawful activity;  or

 (ii) Knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part:

 1. To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

 2. To avoid a transaction reporting requirement under state or federal law.

27

represented the proceeds from unlawful activity. The Court of Appeals based its reasoning on the fact that Tran changed his story concerning whether the money was his or not. Tran's untruthfulness was the basis of the court's reasoning that Tran was aware that the money represented the proceeds from unlawful activity.

¶57. I find it very problematic that the evidence presented in the record is not equally supportive of the jury's conviction of Nguyen for money laundering.[8] Nguyen stated that he came to North Carolina a month earlier after having been invited by his friend of many years, Tran, to visit. However, despite traveling all the way to North Carolina to visit, Nguyen later said that Tran was "not too close a friend."

¶58. Nguyen stated that he was in North Carolina this time to see his "girlfriend" who lived in Charlotte, North Carolina.[9] Nguyen traveled to Charlotte, North Carolina, from his home in New Orleans, Louisiana. It is not exactly clear how Nguyen met his girlfriend. He first said they met over the telephone. When questioned further, he then stated that he found her on the computer and a friend told him to talk to her. He stated that they met in person, and they then talked on the telephone. Nguyen stated that he had been staying with his girlfriend in North Carolina for approximately two to three weeks before the trip to Houston, Texas. Nguyen stated that he had known his girlfriend only for a short time.

---

[8] Nguyen, Tran, and Le each provided written statements to law enforcement. They were also questioned by law enforcement. The interviews were video-taped and transcripts of the video-taped interviews were provided to the jury to read while watching the video-tape.

[9] Nguyen was not sure about his girlfriend's last name, but her American first name was Nancy. He stated that he thought her last name was possibly Ton.

¶59. While in North Carolina, Nguyen wrecked his car. Nguyen stated that his girlfriend did not have an automobile at first, but she bought a truck while he was there. Nguyen did not know from whom she had purchased the truck. However, Nguyen stated that he went with his new girlfriend to get the tags for the truck she had recently purchased. Nguyen ended up on a road trip in his girlfriend's truck headed for Houston, Texas, on a shopping trip to the Galleria Mall with Tran and a female named Hanh Le. It was on this trip to Houston that Nguyen was arrested for money laundering in Rankin County, Mississippi.

¶60. In his video-taped interview with law enforcement, Nguyen admitted that he did not have any money to purchase anything on this shopping trip. Nguyen stated that if he saw anything that he wanted to buy for his girlfriend, like a purse, that he would go back to Houston, from North Carolina, with money to purchase it. Nguyen stated that he planned to spend two or three days in Houston, but he did not have a designated place to stay.

¶61. Nguyen admitted that he drove part of the trip and took turns filling up the truck's gas tank. Nguyen first said that he overheard his girlfriend and some other unidentified person talking about the truck having a broken gas tank.

¶62. When questioned further about who told him or how he heard about the gas tank, Nguyen changed his story. He stated that he knew not to put gas in the second gas tank because he could smell gas leaking from the tank when he put gas in the second tank. When asked if Tran put gas in the second "false" gas tank, Nguyen said he did not. Nguyen stated that Tran must have smelled the gas leaking as well because he never discussed the gas tank with Tran. During his interview with the police, Nguyen was asked if the money smelled. He admitted that the money smelled only like money.

¶63. Officer Larry Davidson testified as an expert witness for the State in the field of drug trafficking and the proceeds of drug trafficking. At the time of the trial, Officer Davidson was employed as an agent with the Drug Enforcement Administration. He testified that North Carolina is known as a warehouse for drug distribution on the east coast. He further testified that Houston, Texas, is known as a large storage zone in narcotics distribution, as well as a place known for money laundering activity. Officer Davidson testified that "the only time I've ever seen false gas tanks were by people that were hauling narcotics or taking money back." He stated that in a case like this where there was no gas in a gas tank, it is strictly a dummy gas tank. The State asked Officer Davidson if in his expert opinion, based upon all of the evidence reviewed and the trafficking factors discussed, whether the money located in the false gas tank was the proceeds of some unlawful activity. Officer Davidson responded that in his opinion the money was derived from some type of narcotics trafficking.

¶64. It is clear that the State presented sufficient evidence that Nguyen and Tran were working together on a joint enterprise to launder money to sustain Nguyen's conviction for money laundering. Officer Davidson testified the $170,000 was discovered in the false gas tank wrapped in aluminum foil and vacuum-sealed in plastic. He testified that based on his experience, the purpose of vacuum-sealing the money was to prevent the drug dogs used along the highways from being able to smell the drugs. Officer Davidson testified that it is not uncommon for the US currency and the drugs to be stored together, causing the currency to smell like the drugs, or for floating cocaine to taint the currency.

¶65. Nguyen's statement to the police contained numerous inconsistencies and an implausible account of events; he changed his story as to how he knew not to put gasoline

in the false tank; he admitted that he drove the truck and added fuel to the truck, and that his "girlfriend" lent the truck to Tran and Nguyen to drive to Houston, Texas, to shop for Christmas presents at the Galleria Mall without any money. However, Nguyen argues that no evidence was presented for the jury to find him guilty of money laundering as to the $170,000 cash discovered in the false gas tank of his girlfriend's truck.

¶66. In my opinion, all of this demonstrates sufficient evidence for the jury to deduce that Nguyen was aware of the money in the false gas tank and that the money, wrapped in aluminum foil and vacuum-sealed in plastic, represented the proceeds from unlawful activity. Besides Nguyen's statement which was introduced into evidence, Officer Davidson testified as a DEA agent that false gas tanks were used to traffic narcotics and to move money to launder.

¶67. For the forgoing reasons, I respectfully concur in part and dissent in part. Based on the evidence presented, I would affirm Nguyen's conviction and sentence in the Circuit Court of Rankin County, Mississippi, and reverse the judgment of the Court of Appeals. However, I concur with the majority's holding to affirm Tran's conviction and sentence in the Circuit Court of Rankin County.

**RANDOLPH, J., JOINS THIS OPINION. SMITH, C.J., JOINS THIS OPINION IN PART.**