# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01301-COA

**IMMANUEL MANNING A/K/A PAPOOSE A/K/A
IMMANUEL D. MANNING A/K/A IMMANUEL
DEWAYNE MANNING A/K/A EMMANUEL
MANNING A/K/A EMMANUEL D. MANNING
A/K/A EMMANUEL DEWAYNE MANNING
A/K/A HOLLYWOOD**                                            APPELLANT

v.

**STATE OF MISSISSIPPI**                                          APPELLEE

DATE OF JUDGMENT:               08/04/2016
TRIAL JUDGE:                    HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:      OKTIBBEHA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                 BY:  JUSTIN TAYLOR COOK
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: BARBARA WAKELAND BYRD
                                  LADONNA HOLLAND
DISTRICT ATTORNEY:              SCOTT WINSTON COLOM
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 03/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     A jury in the Oktibbeha County Circuit Court convicted Immanuel Manning of murder

and witness intimidation.  On the charge of murder, Manning was sentenced as a habitual

offender to life in the custody of the Mississippi Department of Corrections (MDOC) without

eligibility for parole or early release.  On witness intimidation, the circuit court sentenced

Manning to two years in MDOC custody.

¶2.     On appeal, Manning argues that (1) Lieutenant Brett Watson's lay opinion testimony was inadmissible; (2) the State presented insufficient evidence to support the conviction for witness intimidation; (3) jury instruction S-3(A) constructively amended Manning's indictment; and (4) this Court should reverse Manning's murder conviction under the doctrine of retroactive misjoinder. Because we find the evidence was sufficient to support a conviction of witness intimidation, we will only address assigned errors 1–3.

## FACTS AND PROCEDURAL HISTORY

¶3.     On March 7, 2014, Christopher Houston was shot and killed at his home in Starkville, Mississippi. Houston shared that home with his girlfriend Natalla Carter. Carter testified that she was cleaning a bathtub at the time of the shooting. After Houston was shot, Carter stated that she ran outside when she heard Houston call her name. Once outside, Carter saw Houston on the ground near a four wheeler. According to Carter, Houston, in making his final statement, told her that "Papoose shot [him]." Carter testified that she knew "Papoose" to be Manning, and Houston addressed Manning with the same moniker.

¶4.     Deputy Mahyar Netadji, of the Oktibbeha County Sheriff Department, was the first law-enforcement officer to arrive on the scene. Carter relayed that Houston had said that "Papoose" shot him. According to Netadji, he knew that "Papoose" was Manning's moniker.

¶5.     Netadji unsuccessfully tried to get a verbal response from Houston. Houston died at the scene, despite emergency responders' attempts to revive him there and at the hospital. After Houston was transported to the hospital, Netadji spoke to Carter again, who informed Netadji that Manning likely was headed to Jackson, Mississippi.

2

¶6.     In response, Netadji notified dispatchers of Manning's possible involvement in the shooting and sent a "be on the lookout" (BOLO) alert to neighboring counties and the Mississippi Highway Patrol.  Next, Netadji then spoke with Reginald Ferguson, Carter's neighbor.  According to Ferguson, he was outside barbecuing when he noticed a gray Pontiac Bonneville, with a wing on the back, drive into the area before the shooting.  Ferguson went inside his home for a moment, and when he returned he saw a man running back to the Pontiac.  Ferguson described the driver as wearing mustard-colored pants and a dark-colored jacket.

¶7.     Netadji provided that description to dispatch, Lieutenant Watson, and other law-enforcement officers.  Watson also responded to the scene.  Watson also knew Manning was referred to as Papoose and proceeded to search for information on Manning.  While the record is unclear on how Watson ascertained Manning's cell phone number, Watson used it to contact T-Mobile to discover where the phone had been used earlier that day.  T-Mobile emailed Watson coordinates of Manning's cell phone throughout the day.  This information eventually led to Manning's apprehension in Pearl, Mississippi.  After being detained, Officer Greg Jones tested Manning's hands for gunshot residue at the Pearl Police Department.

¶8.     Manning eventually was released on bond.  While on bond, Carter encountered Manning twice.  According to Carter, Manning made kissing gestures toward her during this first encounter.  During the second encounter, Carter testified Manning said something that she took as a threat, although she could not remember exactly what he had said.  She filed

charges against him shortly thereafter.

¶9. On July 18, 2014, Manning was indicted and charged with first-degree murder, possession of stolen property,[1] and witness intimidation. Manning's trial began on August 1, 2016. The State called nine witnesses during its case-in-chief. Manning called one witness and then chose to testify. Afterward, the State called three rebuttal witnesses and rested. The jury found Manning guilty of murder and witness intimidation. Manning appeals.

**DISCUSSION**

*I.        Whether Brett Watson's lay opinion was inadmissible.*

¶10. Manning argues that Watson's testimony was inadmissible lay opinion testimony, because cell-tower pings are technical in nature. Additionally, Manning argues that the State's leading questions evoked affirmative answers from Watson when discussing how he tracked Manning's direction of travel through his cell phone's coordinates.

¶11. "The standard of review for both the admission or exclusion of evidence is abuse of discretion." *Walls v. State*, 928 So. 2d 922, 926 (¶9) (Miss. Ct. App. 2006) (citing *Harrison v. McMillan*, 828 So. 2d 756, 765 (¶27) (Miss. 2002)). "Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party." *Id.* "There is a two-part test to determine the admissibility of lay witness opinion testimony." *Id.* at (¶10). "The information must assist the trier of fact and the opinion must be based upon first hand knowledge." *Id.* (citing *Jones v. State*, 678

---

[1] The State ultimately chose to retire the possession-of-stolen-property charge to the files.

So. 2d 707, 710 (Miss. 1996)). "A layperson is qualified to give an opinion based upon his first hand knowledge that other lay people do not possess." *Id.*

¶12. Manning cites to *Collins v. State*, 172 So. 3d 724 (Miss. 2015) in support of his contentions. In *Collins*, Jairus Collins was convicted of murdering Ebony Jenkins. *Id.* at 727 (¶1). Jenkins's body was discovered behind a building in Hattiesburg, Mississippi. *Id.* "During the course of the investigation, police officers identified Collins as a suspect in Jenkins's murder." *Id.* "Collins initially told officers he did not know Jenkins very well and was working the night of December 7, 2011." *Id.* at 732 (¶4). "Officers subpoenaed Collins's work schedule, however, which showed that Collins was not at work on December 7, 2011." *Id.*

¶13. After officers showed Collins phone records from the night of Jenkins's murder, Collins admitted to having some contact with Jenkins that night. *Id.* "Based on the phone records they obtained, officers determined that Collins and Jenkins exchanged several phone calls and text messages the night of December 7, 2011." *Id.* One of the detectives involved in the investigation testified regarding longitude and latitude coordinates and cell phone towers that Collins and Jenkins's cell phones used to make and receive calls.

¶14. The Mississippi Supreme Court found that the admission of the detective's testimony was a reversible error. *Id.* at 744 (¶29). The Court opined "that testimony that simply describes the information in a cell phone record is properly lay testimony." *Id.* at 743 (¶28). "Likewise, testimony that merely informs the jury as to the location of cell phone towers may properly be lay testimony when it is based upon the personal observations of the witness."

5

*Id.* "But testimony that goes beyond the simple descriptions of cell phone basics, specifically testimony that purports to pinpoint the general area in which the cell phone user was located based on historical cellular data, requires scientific, technical, or other specialized knowledge that requires expert testimony." *Id.*

¶15. Relying on our Supreme Court's holding in *Collins*, Manning argues that Watson provided improper expert testimony when he testified regarding the coordinates and real-time locations provided by T-Mobile. However, this issue is waived on appeal because Manning's defense attorney failed to object to Watson's testimony and the State's presentation of the evidence. "The failure to object to testimony at trial waives any assignment of error on appeal." *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009) (internal quotation marks omitted).

¶16. Procedural bar notwithstanding, the State argues that Manning's assignment of error is without merit. The State notes that Watson's testimony is markedly distinguishable from the testimony that the Supreme Court warned against in *Collins*. We agree. The detective's testimony in *Collins* purported to pinpoint the general area that the cell phone users were located. Here, Watson merely placed the coordinates from the records supplied by T-Mobile into Google maps. Watson's testimony was not complex or technical, necessitating specialized knowledge or training. Moreover, Watson's testimony did not implicate Manning as the detective's testimony did in *Collins*. Therefore, we find that the admission of Watson's testimony was not in error.

> II.     *Whether the State presented sufficient evidence to convict Manning of witness intimidation.*

¶17.   "When reviewing a challenge to the sufficiency of the evidence, this Court will reverse and render only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Hughes v. State*, 983 So. 2d 270, 275-76 (¶10) (Miss. 2008) (internal quotation marks omitted).  "This Court considers the evidence in the light most favorable to the state." *Id.*  "The state receives the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id.* (internal citations omitted).

¶18.   Manning argues that Carter's allegations regarding her two encounters with him after he was released on bond were insufficient to support his conviction for witness intimidation. Specifically, Manning argues that Carter's testimony regarding the threatening statement he made was so patchy, nondescript, and nebulous that it is impossible to conclude what Manning said to her.  As a result, Manning asserts that the State failed to prove witness intimidation beyond a reasonable doubt.

¶19.   Mississippi Code Annotated section 97-9-113 states that "[a] person commits the crime of intimidating a witness if he intentionally or knowingly: . . . [h]arasses or intimidates or attempts to threaten, harass or intimidate a witness or a person reasonably expected to be a witness."  As stated prior, Carter testified to two incidents that she perceived as threats. In the first encounter, Carter stated this occurred when she was leaving the complex where both her mother and Manning resided: "I was coming in to Brooksville Garden and he was leaving out making kissing gestures."  In the second encounter, Carter testified that she could not hear exactly what Manning stated to her, but she could make out the words "do

7

something." "The [Supreme Court] has stated that a single witness's uncorroborated testimony is sufficient to support a conviction." *Cousar v. State*, 855 So. 2d 993, 998-99 (¶16) (Miss. 2003). Moreover, "[t]he jury determines the weight and credibility to give witness testimony and other evidence." *Gillett v. State*, 56 So. 3d 469, 505 (¶102) (Miss. 2010) (citing *Massey v. State*, 992 So. 2d 1161, 1163 (¶12) (Miss. 2008)). "This Court may not pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." *Id.* (internal quotation marks omitted).

¶20. In the case at hand, the jury found Carter's testimony as to the threatening nature of Manning's gestures credible. Carter was the only individual who heard Houston's final statements regarding who shot him. Carter also identified Manning as "Papoose" and was a key state witness. In viewing the evidence in the light most favorable to the State, it was reasonable for the jury to find Manning guilty of witness intimidation.

      III.    *Whether instruction S-3(A) constructively amended Manning's indictment.*

¶21. Manning argues that the variance between his indictment and one of the State's jury instructions constructively amended the indictment. Specifically, Manning asserts that the State's jury instruction neglected to allege an overt act because the grand jury indicted Manning on the allegations that he engaged in conversation and blowing kisses. However, Manning waived this error on appeal because his defense counsel failed to object to the lack of an overt act in the instruction. "The failure to object to testimony at trial waives any assignment of error on appeal." *Ross,*16 So. 3d at 57 (¶21). Therefore, this matter is procedurally barred.

¶22. Procedural bar notwithstanding, Manning's indictment informed him that he was being charged with intimidating a witness by "unlawfully, willfully[,] and feloniously attempt[ing] to intimidate or otherwise influence . . . Carter, a witness to a crime, by threats, force[,] or abuse, by engaging in conversation and blowing kisses at . . . Carter, to obstruct or impede the administration of justice. . . ."

¶23. Instruction S-3(A) informed the jury that it should find Manning guilty of intimidating a witness if it found from the evidence beyond a reasonable doubt that Manning: "did unlawfully, willfully[,] and feloniously; attempt to intimidate or otherwise influence . . . Carter, a witness to a crime; by threats, communication with her with threats, force or abuse; to obstruct or impede the administration of [j]ustice in any [c]ourt."

¶24. In *Bell v. State*, 725 So. 2d 836, 855-56 (Miss. 1998), the [Supreme Court] held that reversal is required where a defendant was convicted of an element of the offense not contained in the indictment, and ". . . reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment." *Bishop v. State*, 812 So. 2d 934, 941 (¶25) (Miss. 2002) (internal quotations omitted). However, "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Bell*, 725 So. 2d at 855 (¶61). "The central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id.*

¶25. Manning argues that the State's failure to include an allegation of an overt act creates such a considerable variance that it warrants reversal. We do not agree. The omission of an overt act did not change any element of the offense or broaden the grounds upon which he

9

could be found guilty.  Accordingly, we find this argument without merit.

¶26.    **AFFIRMED**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**