# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01768-COA

VICTOR A. MITCHELL A/K/A VICTOR ALBERT MITCHELL A/K/A VICTOR MITCHELL                                APPELLANT

v.

STATE OF MISSISSIPPI                                APPELLEE

DATE OF JUDGMENT:          10/11/2019
TRIAL JUDGE:               HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED: LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
                           BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:         HALDON J. KITTRELL
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 03/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    Victor Mitchell was charged and convicted of conspiracy, attempted kidnapping, attempted sexual battery, and attempted extortion. Mitchell was sentenced to serve five years for the conspiracy, life for the attempted kidnapping, thirty years for the attempted sexual battery, and fifteen years for the attempted extortion.

¶2.    Mitchell challenges his convictions on three grounds: (1) the sufficiency of the evidence did not support his convictions of attempted kidnapping, attempted sexual battery, and attempted extortion; (2) the indictment for the counts of attempted kidnapping and

attempted sexual battery was defective; and (3) the jury instructions for the counts of attempted kidnapping and attempted sexual battery were defective.

**FACTS**

¶3.     Mitchell claimed to be in a traffic accident with a large panel truck that caused him to run off the road, resulting in extensive damage to his Porsche.  Angered by the wreck, Mitchell contacted the owner of the company—T.D.[1]  Mitchell asked T.D. to pay for the repairs to his car, the remaining balance Mitchell owed on the car, and to buy his construction company for one million dollars.  Even though T.D. did not believe the accident was the truck driver's fault, he agreed to pay for the repairs to the car and the balance owed by Mitchell.  T.D. testified that he also offered to give Mitchell $10,000 "to help him out."

¶4.     There is some uncertainty as to what T.D. provided and what Mitchell was given. However, witnesses testified that Mitchell felt he was cheated.  Aggrieved, Mitchell spent nearly four months devising and formulating a plan to recoup the money he felt he was entitled to.  While the exact plan varied and evolved from its initial inception, Mitchell ultimately decided to kidnap T.D., sexually assault him, and take pictures during the assault. Mitchell then intended to use those photos to extort money from T.D. by threatening to post them on social media.

¶5.     Mitchell hired three men to help fulfill his plan: Howard Cameron, Glenn Evans, and

---

[1] The Court of Appeals declines to identify victims of sexual assault and attempted sexual assault.  To protect the victim's privacy, the name has been substituted with initials.

2

Willie Lampley. Mitchell had initially offered Cameron $150,000 to just "beat up" T.D. Cameron told Mitchell that he had a friend, Glen Evans, who could help them.

¶6. A few days later, Mitchell met up with Cameron and Evans. Mitchell told the men that he wanted T.D. to be sexually assaulted and photographed in compromising positions. In addition to the $150,000 Mitchell had offered Cameron, he promised to pay Evans $25,000. That day, he gave each of the men $500. He also gave them $300 to purchase a burner phone and a camera. Additionally, Mitchell created code words to keep their plan secret. Cameron and Evans were the "dump trucks," and T.D. was the "truck driver."

¶7. Around a week later, Mitchell again met with Cameron and Evans. This time he drove the men to T.D.'s neighborhood and showed them where he lived. Mitchell also drove the men to a warehouse where T.D. worked. At the end of the meeting, Mitchell again paid the men $500 each.

¶8. A few months later, Mitchell met Willie Lampley. The pair met five days before the crimes when Lampley approached Mitchell at a job site seeking work. Instead of offering him a job with his company, Mitchell told Lampley to meet him later that evening in a Chili's parking lot. There, Mitchell told Lampley that a man owed him a lot of money and offered Lampley $25,000 to kidnap him. Mitchell told him that he needed an answer by the next day, or he would hire someone else. Lampley consulted with his mother and decided to contact law enforcement, who encouraged him to continue communicating with Mitchell.

¶9. Lampley then met with Mitchell again to discuss the job. Mitchell told Lampley that

3

the man he wanted kidnapped was T.D. He wanted Lampley to kidnap T.D. and deliver him to Mitchell for two other men to "rape him or sodomize him or have sex with him on camera and put it on social media to make it look like he like[d] it if he [didn't] give him the money." Mitchell told Lampley where T.D. lived and instructed him to kidnap T.D. from there.

¶10. Unsatisfied with the response from law enforcement at this point, Lampley reached out to T.D. himself to warn him about the plan that was to take place that night. Lampley told T.D. that he knew personal information about him from his conversations with Mitchell, including T.D.'s home address, car tag number, what vehicle he drove, his routines, where he went to church, and what time he went to work. T.D. then contacted law enforcement, and a plan was developed to arrest Mitchell, Cameron, and Evans.

¶11. In cooperation with law enforcement, Lampley continued communicating with Mitchell and consented to have his phone calls recorded. Twelve conversations took place between Lampley and Mitchell that night. Lampley told Mitchell that he had T.D. and to meet him at a new location. Mitchell arrived at the location with Cameron and Evans. Upon their arrival, the three men were arrested. During a search of the vehicles driven by Mitchell and Cameron, officers found cell phones, duct tape, a ski mask, rubber gloves, guns, a black hoodie, black gloves, a flashlight, thief masks, pirate facial hair, fake teeth, zip ties, and a "dong with a suction cup."

¶12. Mitchell was indicted and convicted of conspiracy, attempted kidnapping, attempted sexual battery, and attempted extortion. He was sentenced to serve five years for the

4

conspiracy, life for the attempted kidnapping, thirty years for the attempted sexual battery, and fifteen years for the attempted extortion, all in the custody of the Mississippi Department of Corrections. Mitchell made a motion for a directed verdict, which was denied. Post-trial, Mitchell moved for judgment notwithstanding the verdict or a new trial. That motion was also denied. Aggrieved, Mitchell now appeals his convictions.

## DISCUSSION

### I. The evidence sufficiently supported the attempted-kidnapping conviction.

¶13. Mitchell challenges the sufficiency of the evidence supporting his convictions of attempted kidnapping, attempted sexual battery, and attempted extortion. He argues that his conduct did not constitute the "overt act" element of attempt. Rather, Mitchell asserts that his actions "were mere preparations for the commission of the crimes planned."

¶14. "In determining challenges to the legal sufficiency of the evidence, the Court views the evidence in a light most favorable to the State." *Alexander v. State*, 770 So. 2d 1017, 1018 (¶6) (Miss. Ct. App. 2000). "If sufficient evidence exists to support the jury's verdict, then the conviction will stand." *Id*. In the case at bar, the State was obligated to provide sufficient evidence to prove the elements of attempted kidnapping, attempted sexual battery, and attempted extortion.

¶15. "[A]n attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968). "The

5

mere intention to commit a crime is not punishable; the intention must therefore be coupled with an overt act." *Moffett v. State*, 287 So. 3d 976, 979 (¶14) (Miss. Ct. App. 2019). "Whether an act has passed beyond the stage of preparation and constitutes an attempt is a question of degree." *Bucklew*, 206 So. 2d at 202. The act "must have progressed to the extent of giving him power to commit the offense and nothing but an interruption prevented the commission of the offense[.]" *Id.* at 203. However, the act "need not be the last or final step in the sequence." *Id.* at 202.

¶16. Kidnapping is defined as follows: "Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will[.]" Miss. Code Ann. § 97-3-53 (Rev. 2014). Therefore, the crime of attempted kidnapping requires a showing that Mitchell intended to kidnap T.D., made "a direct ineffectual act done toward" the kidnapping, and failed "to consummate" the kidnapping. *Bucklew*, 206 So. 2d at 202.

### A. The first and third elements of attempted kidnapping were supported by sufficient evidence.

¶17. The first element, the intention to kidnap T.D., was sufficiently supported. Mitchell concedes as much in his brief. He states that "[t]he evidence is sufficient to show that Mitchell and two other men made plans to kidnap and sexually assault [T.D.]."

¶18. Likewise, the third element, the failure to consummate the kidnapping, was also satisfied. While Mitchell does not expressly concede this point, he implies as much in his

6

brief by stating that "because Lampley thwarted the plan by notifying the potential victim and involving the police, the crime was not even possible." "The attempt statute requires that, before one may be convicted of attempt, he shall fail therein, or shall be prevented from committing the same." *West v. State*, 437 So. 2d 1212, 1214 (1983). "[S]uch prevention must result from 'extraneous causes.'" *Ishee v. State*, 799 So. 2d 70, 74 (¶9) (Miss. 2001) (quoting *West v. State*, 437 So. 2d 1212, 1214 (Miss. 1983)).

¶19.   Our precedent establishes that "[o]ne of the leading cases in the United States on attempt to commit a crime is *Stokes v. State,* 92 Miss. 415, 46 So. 627, 21 L.R.A., N.S., 898 (1908)." *Duke v. State,* 340 So. 2d 727, 729 (Miss. 1976). In *Stokes*, a defendant hired a man, Robertson, to murder his paramour's husband. *Stokes*, 92 Miss. 415, 46 So. at 627-28. Robertson informed the police of the plan, including "the night when, the hour at which, and the place where" the murder was to be carried out. *Id*. at 628. On the night of, Stokes "procured a loaded gun" and went to the agreed upon place where the murder was to occur. *Id*. Instead, Stokes was arrested by hidden officers who had arrived earlier. *Id*.

¶20.   Our Supreme Court held that Stokes' purchase of the gun, or even the purchase combined with the act of loading the gun, might not constitute attempt. *Id*. But when those facts were combined with the defendant having "started out on his mission to kill, but is prevented from carrying out his design by such extraneous circumstance[,] . . . he is clearly guilty of attempt." *Id*. The Court also rejected Stokes' argument that he could not have committed the crime because the husband was not at the location at the time of his arrest.

7

*Id*. at 629. In affirming his conviction, the Court held that such an argument had no application where "[i]t was no fault of Stokes that the crime was not committed" and that the crime "only became impossible by reason of the extraneous circumstance that [the husband] did not go that way, and, further, that he was arrested and prevented from doing so." *Id*.

¶21. Here, Mitchell's plan was frustrated in an identical manner as the attempted murder in *Stokes*. The reason Mitchell did not kidnap T.D. was because of outside interference; he had not decided on his own volition to abandon the plan. He was thwarted only because of Lampley's cooperation with the police and of his own subsequent arrest. Therefore, the third element, failure to consummate the plan, was satisfied.

### B. There is sufficient evidence of an overt act in furtherance of the kidnapping.

¶22. Mitchell's primary argument focuses on the second element of attempt. He claims that he could not be convicted because "no overt act was made in furtherance of either crime." However, there was ample evidence of Mitchell's actions in furtherance of the crime of kidnapping. "Whether an act has passed beyond the stage of preparation and constitutes an attempt is a question of degree." *Bucklew*, 206 So. 2d at 202. The question before the Court is whether Mitchell crossed the line between mere preparation and action.

¶23. As in *Stokes*, Mitchell recruited and offered to pay a team of men to carry out his plan. For their participation, Mitchell offered to pay Howard Cameron $150,000. Glen Evans and Willie Lampley were each offered $25,000. However, Mitchell went one step farther than the defendant in *Stokes*, as he had already made payments to Cameron and Evans in the

amount of $1,000 each.

¶24. Second was the elaborate nature and detail of Mitchell's plan, along with the effort he had put into it to ensure its success. Mitchell set a time, date, and location. To ensure the correct person was kidnapped, Mitchell acquired T.D.'s car tag number and his home address, learned his routines, and then shared that information with Lampley. He even drove Cameron and Evans to T.D.'s neighborhood on two separate occasions to show them where the intended victim lived. He also drove the men to a warehouse where T.D. worked.

¶25. Mitchell's plan also included burner phones and code words to avoid getting caught. During one of their meetings, Mitchell gave Cameron $300 to purchase a burner phone so they could secretly communicate about their plans. He also implemented code words to use when communicating with his co-conspirators.

¶26. Third, Mitchell procured the necessary tools to carry out his plan. On the night of the attempted kidnapping, Mitchell and his accomplices were found with (1) two handguns and bullets; (2) multiple disguises, including two "thief" masks, a ski mask; a mask with tape, pirate facial hair, and fake teeth; (3) the burner phones; (4) restraints in the form of "loaded" and "unloaded" zip ties and duct tape; (5) a "dong with [a] suction cup"; (6) multiple pairs of gloves; and (7) one large and one small flashlight.

¶27. Fourth, Mitchell set the plan into motion. On November 18, 2016, Mitchell called Cameron and Evans and said, "[W]e have the mark"—meaning that T.D. had been kidnapped. This was the signal the men had been waiting for. Believing that their intended

9

victim had been kidnapped, Cameron and Evans drove all the way from Jackson to Hattiesburg to carry out the rest of the plan. The three men then met up and drove to the pre-designated spot. There, Mitchell and his co-conspirators were arrested and found with the above described tools necessary to complete their plan.

¶28. Last, Mitchell actually believed that T.D. was caught and that his plan was fully in motion. The evidence in this case surpassed "mere prep," and only Lampley's revealing of the plan to law enforcement thwarted the elaborate plot.

¶29. Because the evidence was sufficient to support Mitchell's conviction of attempted kidnapping, we affirm on this issue.

**II.     The evidence sufficiently supported the attempted sexual-battery conviction.**

¶30. Just as with the attempted kidnapping conviction, Mitchell does not challenge the first element of attempt in relation to his conviction of attempted sexual battery. Additionally, the third element—"failure to consummate its commission" was met for reasons previously stated: Mitchell failed to complete the sexual battery due to reasons beyond his control—Lampley's cooperation with the police and Mitchell's subsequent arrest. Like his contention with his conviction of attempted kidnapping, Mitchell challenges the second element of attempt and argues that there was no evidence of any overt act in furtherance of the crime of sexual battery.

¶31. "On a charge of attempted sexual battery, the State must show that an overt act toward sexual penetration occurred and the defendant either failed or was prevented from completing

10

the actual penetration." *Alexander*, 770 So. 2d at 1018 (¶6); *see also* Miss. Code Ann. § 97-3-95(1) (Rev. 2014). "[W]hat is required is an act which goes beyond mere preparation and which is suited for the intended purpose—here, sexual penetration." *Ishee*, 799 So. 2d at 73 (¶7). "[T]he act may be any act in the series of acts which would ordinarily result in the commission of the crime, and need not be the last or final step in the sequence." *Id.* (internal quotation mark omitted).

¶32. Our Supreme Court has upheld a defendant's conviction of attempted sexual battery when he asked a child to engage in fellatio. *Id.* at 74 (¶9). In that case, a grocery store employee approached a nine-year-old boy, asked him to engage in fellatio, and pointed to his penis. *Id.* at 72 (¶2). The Court held that the defendant's conduct sufficiently constituted an overt act in furtherance of the offense of sexual battery. *Id.* at 74 (¶9).

¶33. Mitchell went much farther than the defendant in *Ishee*. To accomplish his goal of sexually battering T.D., Mitchell proceeded with the above mentioned steps to kidnap him, hired men to perform the sexual battery, procured an object to be used in the assault, drove to the intended hand-off spot, and had the dildo in his car when he was arrested.

¶34. Mitchell's actions went beyond mere preparation and the only thing that halted the commission of the crime was Lampley's cooperation with the police.

> **III.** **The evidence sufficiently supported the attempted-extortion conviction.**

¶35. For his final sufficiency argument, Mitchell claims that none of the elements for attempted extortion were satisfied. "A person is guilty of extortion if he purposely obtains

11

or attempts to obtain property of another or any reward, favor, or advantage of any kind by threatening . . . the public or private revelation of information not previously in the public domain for the purpose of humiliating or embarrassing the other person[.]" Miss. Code Ann. § 97-3-82(2) (Rev. 2014). The express goal of the plan was to create sexually degrading videos of the victim for extortion.

¶36. The critical factor here is the undisguised purpose of the attempted kidnapping and attempted sexual battery—to generate material to extort T.D. Mitchell's purpose in seizing and detaining T.D. was to film him being sexually battered, threaten to post the videos on social media, and use that material to extort him. At trial, Lampley stated that Mitchell "had two guys that were going to come from Jackson once I got [T.D.] and held him, brought him to him. And they was going to, you know, rape him or sodomize him or have sex with him on camera and put it on social media to make it look like he like[d] it if he don't give him the money." Cameron corroborated Lampley's testimony. He testified that Mitchell "wanted to humiliate [T.D.]. He wanted him, he said, raped. He wanted—he want[ed] us to take pictures of him in compromising positions."

¶37. Indeed, Mitchell's co-conspirators were repulsed by the plan. They asked Mitchell, "[W]here you getting this from, from physically assaulting him, beating him up to raping him?" Cameron testified that Mitchell's response was, "Well, he's slime. I mean he's slime. He's just—he's garbage. And I really want him, you know, dealt with real bad."

¶38. Though the attempt was foiled by Lampley's informing the police and Mitchell's

12

subsequent arrest, Mitchell's intent was clearly demonstrated by his actions. While Mitchell contends this does not meet the elements of attempted extortion, the evidence, properly viewed in light of the jury's verdict, is sufficient to support his conviction.

## IV. The indictment's failure to describe overt acts was harmless error.

¶39. Next, Mitchell attacks the integrity of his indictment. Specifically, he argues the indictment is fatally defective as to the attempted kidnapping and attempted sexual battery counts for failure to describe overt acts.

¶40. "The purpose of an indictment is to satisfy the constitutional requirement that a 'defendant be informed of the nature and cause of the accusation.'" *Taylor v. State*, 94 So. 3d 298, 305 (¶15) (Miss. Ct. App. 2011) (quoting U.S. Const. amend. VI); *see* Miss. Const. art. 3, § 26 ("[T]he accused shall have a right . . . to demand the nature and cause of the accusation").

¶41. "The purpose of these requirements is to ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government." *Tran v. State*, 962 So. 2d 1237, 1241 (¶16) (Miss. 2007). "Therefore, in order for an indictment to be sufficient, it must contain the essential elements of the crime charged." *Id*. (internal quotation mark omitted).

¶42. The Rules of Criminal Procedure guide that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the

13

nature and cause of the accusation." MRCrP 14.1(a)(1). "Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." *Id*.

¶43. Nonetheless, "[d]epending on the nature of the case and language of the statute, some indictments may need additional words or facts to sufficiently put a defendant on notice." *Sallie v. State*, 230 So. 3d 312, 314 (¶8) (Miss. Ct. App. 2017). Indictments charging a defendant with an attempted crime must describe the overt act. *Ishee*, 799 So. 2d at 73 (¶5) ("it is necessary to charge and prove some overt act done toward commission of offense") (internal quotation marks omitted); *Short v. State*, 990 So. 2d 818, 819 (¶3) (Miss. Ct. App. 2008) ("In order to indict a defendant for an attempted crime, the indictment must set out with certainty the specific conduct that the State asserts to be the overt act"); *see also State v. Berryhill*, 703 So. 2d 250, 256 (¶24) (Miss. 1997) (holding that the crime of burglary requires more description for an indictment to be valid because "[b]urglary is unlike robbery and all the other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime").

¶44. Mitchell's point is not that the two counts do not accurately track the kidnapping and sexual battery statutes. Both counts mirror the authorizing statutes. However, the indictments do not describe how the two crimes were attempted. Mitchell's argument is that the failure to describe the attempts in the indictment renders the counts void.

¶45. Mitchell raised this same argument in the trial court. In response, the State argued

before the trial court that the indictment was not defective pursuant to a decision by the United States Supreme Court. The Government had charged the citizen of another country with "illegally attempting to reenter the United States," after which the defendant was convicted. *United States v. Resendiz-Ponce*, 549 U.S. 102, 103 (2007). A federal appeals court reversed the conviction, finding that it was flawed from the start "[b]ecause the indictment failed to allege a specific overt act that he committed in seeking reentry[.]" *Id*.

¶46.    In appealing the reversal, the Government argued "that the indictment at bar implicitly alleged that respondent engaged in the necessary overt act simply by alleging that he attempted to enter the United States." *Id*. at 107 (cleaned up). By a vote of 8-1, the Supreme Court agreed the overt act element was implied. *Id*.

¶47.    The Supreme Court found that "as used in the law for centuries," the word attempt "encompasses both the overt act and intent elements." *Id*. As such "the word 'attempt' as used in common parlance connote[s] action rather than mere intent." *Id*. "Consequently, an indictment alleging attempted illegal reentry . . . need not specifically allege a particular overt act or any other component part of the offense." *Id*. (cleaned up).

¶48.    The United States Supreme Court did not reach the question of harmless error in that case, as it found the indictment was not defective. *Id*. at 104. The Mississippi Supreme Court has never addressed *Resendiz-Ponce* but has applied a harmless error analysis to a claim of a defective indictment in *Tran v. State*, 962 So. 2d 1237 (Miss. 2007). There, a defendant charged with money laundering argued the indictment "failed to disclose to him

15

the nature of the alleged unlawful activity," which is a predicate of the crime. *Tran*, 962 So. 2d at 1240 (¶12). The Supreme Court agreed with the defendant that the indictment was not informative enough under the money laundering statute. *Id*. at 1243 (¶23). Accordingly, the Court held "that Tran's indictment was defective." *Id*. at 1246 (¶36).

¶49. "However," the Court continued, "our inquiry does not end here." *Id*. While finding the indictment failed to properly inform the defendant of the unlawful activity, the Court proceeded to a harmless error analysis. *Id*. It looked to whether the defendant had learned of the allegations against him beyond the bare face of the indictment. *Id*. at 1247-48 (¶¶39-41). The record showed that a preceding civil forfeiture action, an affidavit filed by Tran, a speedy trial motion sought by his counsel, and a suppression hearing prior to trial all revealed that the defendant was aware of the "alleged unlawful activity" which formed the basis for his money laundering charge. *Id*.

¶50. "Based on the record before us, we find the omission of the 'specified unlawful activity' in the indictment to be harmless error which did not render the trial fundamentally unfair." *Id*. at 1248 (¶42). Because "[t]he defense had ample notice that the charge of money laundering was based on the State's claim that the money was the product of drug trafficking," the conviction was affirmed despite the defective indictment. *Id*.

¶51. The Court did caution that it did "not wish to diminish the importance of the information required to be included in an indictment" and that "were it not for the abundance of evidence in the record that Tran had fair notice and an opportunity to prepare a defense,

16

his constitutionally-infirm indictment would require that we reverse his conviction." *Id*. at 1248 (¶43); *see also Taylor*, 94 So. 3d at 306-07 (¶20) (applying harmless error analysis to indictment for felony driving under the influence causing death or disfigurement when defendant "had notice of the basis for the negligence charged in the indictment"); *Koch v. State*, 222 So. 3d 1088, 1093 (¶16) (Miss. Ct. App. 2017) (applying harmless error doctrine when defendant "had notice of the basis for the negligence charged in the indictment" for aggravated DUI, as shown by defense at trial). We therefore proceed under our precedent applying harmless error analysis to claims of a defective indictment.

¶52. The counts for attempted kidnapping and attempted sexual battery failed to describe overt acts toward the commission of those crimes. Under our precedent, the failures to describe the overt acts render the indictment defective. However, "if the indictment reasonably provides the accused with actual notice, it is sufficient to charge the defendant with the crime." *Purnell v. State*, 878 So. 2d 124, 128 (¶11) (Miss. Ct. App. 2004).

¶53. Here, Mitchell was provided with ample notice "of the nature and cause of the accusations" against him. First, Mitchell's co-conspirators were listed as prosecution witnesses far in advance of trial. Lampley was listed as a witness for the State on August 1, 2017—over two years before the trial. The State gave notice of its intention to introduce Cameron's statement—which was included in discovery—six months before trial and later included Cameron as a State witness.

¶54. Secondly, at a preliminary hearing on this matter held on January 5, 2017, Investigator

17

Jack Rayner's testimony put Mitchell on notice of the charges against him. Investigator Rayner testified that after he learned of the plan through a confidential informant—Lampley—he read the text messages and recorded phone conversations between Mitchell and the informant. From there, Mitchell, Cameron, and Evans were found and arrested at the pre-designated location provided by the informant. Upon their arrest, the men were found with the items to commit the crimes: specifically, "gloves, zip ties, duct tape, and Howard Cameron's vehicle [with] a sex toy in it."

¶55. The investigator further testified that Cameron and Evans corroborated what the informant had told him regarding the plan. Specifically, Investigator Rayner stated that the plan was for the men to "sexually assault the victim and record it and then they were going to threaten to put that on social media or the internet to embarrass him to get money from the victim." This alone was sufficient to put Mitchell on notice of the charges against him.

¶56. Third, in its supplemental response to discovery prior to trial, the State informed Mitchell that the intended victim, T.D., would be testifying. Not only did the State inform Mitchell that T.D. would be testifying, but it provided a summary of T.D.'s expected testimony.

¶57. Finally, Mitchell was appointed a private investigator to assist in his defense. Prior to trial, Mitchell filed a motion wherein he stated, "Due to the complexity of the issues and the number of witnesses [defense counsel] needs the assistance of an investigator to complete[ly] defend the case." The motion named an investigator who had already agreed

18

to conduct an investigation into the case. The court granted the motion and allowed a maximum of $1,000 to be used toward the investigation with a possible increase upon motion.

¶58. Just as the Supreme Court did in *Tran*, we urge that the State "should carefully specify the unlawful activity in the indictment" in order "to avoid the burden of showing notice apart from the indictment, and the risk that such notice will be found inadequate." *Tran*, 962 So. 2d at 1248 (¶45). However, in this case it is clear that Mitchell was provided adequate notice of the charges against him prior to trial. For that reason, despite the flaws in the indictment, the error was harmless.

> **V.      The omission of an "overt act" in the jury instructions was harmless error.**

¶59. Lastly, Mitchell insists that the jury instructions for the counts of attempted kidnapping and attempted sexual battery were admitted in error. While he did not object at trial, he now claims that because the instructions failed to allege an overt act, an essential element of the crimes of attempted kidnapping and attempted sexual battery, the jury instructions were insufficient.

¶60. "[A] proper jury instruction on attempt requires the "three elements stated in the statute of (1) a design or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act." *Scott v. State*, 231 So. 3d 1024, 1035 (¶38) (Miss. Ct. App. 2016), *aff'd*, 231 So. 3d 995 (Miss. 2017). The failure to include an overt act can be reversible error. *Armstead v. State*, 716 So. 2d 576, 583 (¶29) (Miss. 1998)

19

(reversing a conviction for attempted rape where the jury instruction failed to include the requirement that defendant either failed or was prevented from completing the act).

¶61. In this case, as with the indictment, the instructions for attempted kidnapping and attempted sexual battery failed to specify an overt act. However, Mitchell failed to object to these instructions or, indeed, any of the State's proposed jury instructions. Nor did Mitchell submit any counter instructions.

¶62. Because Mitchell did not object, he "waived this error on appeal because his defense counsel failed to object to the lack of an overt act in the instruction." *Manning v. State*, 269 So. 3d 216, 221 (¶21) (Miss. Ct. App. 2018). "The failure to object to testimony at trial waives any assignment of error on appeal." *Id*. "This issue is therefore procedurally barred, and our review is restricted to the plain-error doctrine." *Hollingsworth v. State*, 269 So. 3d 456, 458 (¶7) (Miss. Ct. App. 2018).

¶63. Even if it were not barred, as discussed in the preceding section, the failure to include an overt act was harmless error. Mitchell's premise that the jury instructions were deficient is built on his assumption that the indictment is defective. As we concluded above, the indictment did not deprive Mitchell of notice of the charges against him; it logically follows that the jury instructions will not be flawed if based upon the same indictment. For "trial judges should generally strive to craft jury instructions that track the indictment's language[.]" *Young v. State*, 271 So. 3d 650, 657 (¶27) (Miss. Ct. App. 2018) (internal quotation marks omitted).

20

¶64. In *Young*, we examined an instruction a defendant claimed differed from his indictment. *Id*. "Assessing the effect of the variance on the integrity of [the] trial, we find that S-2A did not *substantially* alter the requisite elements of kidnapping." *Id*. at (¶28) (emphasis added). Because "[t]he essence of the charged offense remained the same," we declined to reverse. *Id*.; *see also Baker v. State*, 95 So. 3d 692, 696 (¶19) (Miss. Ct. App. 2012) (finding a "jury instruction was sufficient because its language, when read as a whole, tracked the language contained in the indictment" and "the indictment clearly notified [the defendant] that he was being charged with statutory rape"). The same conclusion should be reached here.

¶65. The reasoning of the United States Supreme Court in *Resendiz-Ponce*, 549 U.S. at 107, shows why the jury instructions in this case did not substantially alter the essential elements of the crimes of attempted sexual battery and attempted kidnapping. The Supreme Court found that the word "attempt" in fact "encompassed both the overt act and intent elements." *Id*. Under this same approach, the State argues that "[t]he use of the word 'attempt' in both jury instructions 7 and 8 instructed the jury on the 'intent' and 'overt act' elements of an attempt." Based upon the record before us, we cannot find that the trial court committed plain error in instructing the jury in a way that generally tracked the language of the indictment.

¶66. The separate opinion would agree with Mitchell that the jury instructions are missing an essential element. *See Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013) (finding that

21

failing to instruct a jury on the elements of a crime is plain error). However, it is well settled that "jury instructions do not have to be perfect, they only have to fairly announce the applicable rule of law." *Brown v. State*, 19 So. 3d 85, 92 (¶18) (Miss. Ct. App. 2008). Ultimately, "it is preferable that the trial court expressly state to the jury that the defendant, to be guilty of attempt, must have performed certain actions with the specific intent to commit the target crime." *Armstead*, 716 So. 2d at 583 (¶30). And while greater specificity in the instructions here would have been preferred, we find that the instructions given in this case are not so flawed that they rise to the level of plain error.

¶67. Because Mitchell failed to preserve an objection to the jury instructions, and because any error found with the instructions was harmless, this claim is without merit.

## CONCLUSION

¶68. We find that there is sufficient evidence to support Mitchell's convictions for attempted kidnapping, attempted sexual battery, and attempted extortion. We also find that the exclusion of overt acts in the indictment was harmless error in this case. Further, we find that Mitchell's challenge to the jury instructions is procedurally barred. For the foregoing reasons, we affirm.

¶69. **AFFIRMED.**

**GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J. EMFINGER, J., NOT PARTICIPATING.**

22

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶70. The majority has determined that the failure to allege an overt act in the indictment and jury instructions was harmless error. For the reasons discussed below, I respectfully dissent from the majority's findings on these two issues, and I would reverse Mitchell's convictions for attempted kidnapping and attempted sexual battery and dismiss the indictment as to those two counts.

## I. *The Indictment's Failure to Allege an Overt Act*

¶71. Counts II and IV of the indictment not only charged Mitchell under the respective statutes for the crimes of attempted kidnapping and attempted sexual battery, but also under the general attempt statute, Mississippi Code Annotated section 97-1-7 (Rev. 2014). Section 97-1-7(1) provides in part:

> Every person who shall design and endeavor to commit an offense, *and shall do any overt act toward the commission thereof*, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.

(Emphasis added). In moving for a directed verdict at trial, Mitchell's counsel argued that the indictment was defective, as it failed to describe an overt act. The court denied the motion, and Mitchell renewed this argument in his motion for judgment notwithstanding the verdict (JNOV). Denying Mitchell's posttrial motion, the trial court held that the indictment put Mitchell "on notice of the charges for attempt and the word 'attempt' itself connotes an

23

overt act."[2]

¶72.    While noting the trial court's reliance on *United States v. Resendiz-Ponce*, 549 U.S. 102, 103 (2007), in ruling to deny Mitchell's motion, the majority nevertheless has determined that the indictment's failure "to describe overt acts toward the commission" of the counts for attempted kidnapping and attempted sexual battery rendered the indictment defective.  I agree.  Yet the majority further finds this error was harmless because "Mitchell was provided adequate notice of the charges against him prior to trial."  Because Mississippi Supreme Court precedent supports a finding of reversible error, I must dissent from the majority's holding on this issue.

¶73.    In *Maxie v. State*, 330 So. 2d 277, 277 (Miss. 1976), the Mississippi Supreme Court held that an indictment charging a defendant with the attempt of a crime "must set forth two elements: (1) the intent to commit the offense, and (2) an overt act toward its commission." The *Maxie* court further held, "The correct rule is that if an indictment does not allege an essential ingredient of the crime charged, as is true here, such a defect is not waived by the failure to demur."  *Id*. at 278; *see also Durr v. State*, 446 So. 2d 1016, 1017 (Miss. 1984) ("Because an essential ingredient of the offense" of attempted burglary, an overt act, was

---

[2] The trial court also noted that Mississippi Rule of Criminal Procedure 14.4 required Mitchell to raise the issue of a defect in the indictment "by written motion."  Mitchell does not address the court's finding in this regard.  However, Mississippi law has consistently held that challenges based on jurisdictional defects to an indictment, such as the failure "to charge a necessary element of a crime," may not be waived for the purposes of appeal. *Qasoon v. State*, 232 So. 3d 831, 834 (¶9) (Miss. Ct. App. 2017).

"missing from the indictment, it failed to charge and crime and [was] void.").[3] The supreme court has since reiterated that "in prosecution for an attempt to commit an offense, it is *necessary to charge and prove* some overt act done toward commission of offense; an 'overt act' being one which manifests intention to commit crime." *Ishee v. State*, 799 So. 2d 70, 73 (¶5) (Miss. 2001) (emphasis added) (quoting *Dill v. State*, 149 Miss. 167, 170, 115 So. 203 (1928)).

¶74. Our Court has also recognized this necessity in *White v. State*, 851 So. 2d 400, 403 (¶5) (Miss. Ct. App. 2003), in which we addressed a defendant's claim that his indictment was defective for failing "to charge with any measure of certainty the specific overt act in furtherance of the attempted crime that is a critical element of a charge of attempt," the precise issue raised here. We held that "in order to indict for an attempt, the indictment must set out with certainty the specific conduct that the State asserts to be the 'overt act' undertaken by the defendant." *Id*. (citing *Maxie*, 330 So. 2d at 278); *see also Short v. State*, 990 So. 2d 818, 819 (¶¶3-4) (Miss. Ct. App. 2008) (reversing and remanding for a new trial because the indictment failed to allege an overt act).

¶75. Therefore, I find that the failure to contain an allegation of an overt act, which is an essential element of attempt under section 97-1-7, constitutes reversible error.

---

[3] More recently, in *Scott v. State*, 305 So. 3d 145, 148 (¶15) (Miss. 2020), the supreme court emphasized its holding in *Maxie* that "an indictment under Mississippi Code [Annotated] section 97-1-7 'must set forth'" the two elements of (1) intent to commit the offense and (2) an overt act toward the commission of the offense.

## II. Jury Instructions 7 and 8

¶76. The majority also concludes that the jury instructions for attempted kidnapping and attempted sexual battery failed to allege an overt act. However, the majority finds the issue was waived by the defendant's failure to object or, alternatively, was harmless error. In the case cited by the majority to support waiver, *Manning v. State*, 269 So. 3d 216, 221 (¶21) (Miss. Ct. App. 2018), the issue was whether "the variance between [the defendant's] indictment and one of the State's jury instructions," which failed to allege an overt act, "constructively amended the indictment." Without citation to authority, this Court concluded that this failure to allege an overt act in the jury instruction did not "create[] such a considerable variance [warranting] reversal," as "[t]he omission of an overt act did not change any element of the offense or broaden the grounds upon which he could be found guilty." *Id*. at 222 (¶25).

¶77. To reiterate, the two elements that must be "charged and proved" are the intent to commit the offense and "some overt act done toward commission of [the] offense" *Ishee*, 799 So. 2d at 73 (¶5); *Maxie*, 330 So. 2d at 277. Our Court has also noted in *White*, 851 So. 2d at 403 (¶5), that "[t]here can be no doubt that some overt act aimed at the accomplishment of the intended crime is an essential element of a charge of attempt."

¶78. In *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013), the supreme court noted that although a defendant "did not object to the jury instruction, the 'failure to instruct the jury on the essential elements of the crime [was] plain error.'" (Quoting *Rogers v. State*, 95 So.

26

3d 623, 632 (¶30) (Miss. 2012)). This Court has further held, "[I]nstructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object at trial." *Hodges v. State*, 285 So. 3d 711, 720 (¶36) (Miss. Ct. App. 2019) (quoting *Chesney v. State*, 165 So. 3d 498, 503 (¶10) (Miss. Ct. App. 2015)).

¶79.   Analogous to the present case, the supreme court considered in *Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995), a defendant's argument that a jury instruction for attempted capital rape failed to provide the essential elements of the crime. The *Henderson* court noted that "[w]here the jury had incorrect or incomplete instructions regarding the law, our review tasks is nigh unto impossible and reversal is generally required." *Id*. Although it was determined that the State had "provided the jury with sufficient evidence" to support a guilty verdict, the supreme court nevertheless reversed and remanded the case because the jury instruction had failed to "set forth the three elements" for attempt, specifically the failure or prevention of completion. *Id*. at 223.

¶80.   Additionally, the supreme court has held "that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014). Addressing the failure to instruct the jury on the elements of the underlying felony of robbery in a capital murder case, the *Harrell* court overruled its prior decision in *Kolberg v. State*, 829 So. 2d 29 (Miss. 2002), "to the extent that it provides harmless[-]error analysis when the

27

trial court fails to instruct a jury as to elements of a charged crime." *Harrell*, 134 So. 3d at 269, 271, 275 (¶¶12, 18, 30). In *Waldrop v. State*, 247 So. 3d 364, 366 (¶¶8-9) (Miss. Ct. App. 2018), our Court recognized the supreme court's ruling in *Harrell* and found that although the defendant had "neither objected at trial to the omission of an armed-robbery elements instruction nor submitted his own such instruction, his argument on appeal [was] not procedurally barred." Holding that "the circuit court's denial of Waldrop's 'right to have a jury decide guilt as to each and every element' of the charge against him constitute[d] reversible error," we reversed the conviction and remanded the case for a new trial. (Citing *Harrell*, 134 So. 3d at 275 (¶30)). Thus, I find that the failure to list an overt act as an element in Jury Instructions 7 and 8 constitutes reversible error.

## CONCLUSION

¶81. If the failure to include an overt act in the jury instructions was the only finding of error, remanding for a new trial would be the proper disposition. However, because the indictment was fatally defective in failing to include an essential element of the crime charged and, thereby, failed to charge Mitchell with a crime under Mississippi law, I would reverse the convictions for attempted kidnapping and attempted sexual battery and dismiss the indictment as to those two counts. *See Thomas v. State*, 126 So. 3d 877, 880 (¶9) (Miss. 2013) (holding that "the failure to charge [defendant] with a crime cognizable under Mississippi law renders that count of the indictment void, requiring reversal of the conviction in Count II and dismissal of the indictment"); *Gales v. State*, 131 So. 3d 1238, 1240 (¶¶10-

28

11) (Miss. Ct. App. 2013) (reversing conviction and dismissing indictment as indictment was void for failing to charge an essential element of the crime).

**CARLTON, P.J., JOINS THIS OPINION.**